UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x

JAMES MITCHELL,
a/k/a Wamel Allah,

                Petitioner,                NOT FOR PUBLICATION
                                                    **MEMORANDUM AND ORDER**
              – against –                04 CV 1088 (CBA)

JOSEPH CONWAY, Superintendent of
Attica Correctional Facility,

                Respondent.

------------------------------------------------x
AMON, United States District Judge.

      Before the Court is James Mitchell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mitchell is currently serving a term of twenty-five years to life in a New York State prison for his 1977 conviction on charges of murder in the second degree and criminal possession of a weapon in the second degree. He contends that classification of his murder conviction as a violent felony offense has led to an increase in the punishment he is receiving, in violation of the *Ex Post Facto* Clause of the United States Constitution and the Due Process Clause of the Fourteenth Amendment.

**I.    Background**

      On August 30, 1975, Mitchell shot and killed Charles Freeman during an altercation at a party in Brooklyn, NY. After a trial by jury, Mitchell was convicted in 1977 in New York State Supreme Court of murder in the second degree, as defined by New York Penal Law § 125.25(1), and criminal possession of a weapon in the second degree, as defined by New York Penal Law § 265.03. He received concurrent sentences

1

totaling twenty five years' to lifetime imprisonment. The conviction was affirmed on appeal by the Appellate Division of the New York State Court. People v. Mitchell, 70 A.D.2d 789 (2d Dept. 1979).

Mitchell has since filed six motions pursuant to New York Criminal Procedure Law Article 440 in the New York State Supreme Court challenging his conviction, sentence, or continued incarceration. The last of these motions, filed pursuant to N.Y. Criminal Procedure Law § 440.20 in July of 2003, asserted that the New York State Department of Correctional Services violated the *Ex Post Facto* Clause of the United States Constitution by reclassifying his crime as a violent felony offense on the basis of a law enacted after his conviction. The court denied the motion on the ground that such a reclassification was not a recognizable ground for relief under section 440.20, which allows a court to set aside a sentence only when the sentence is "unauthorized, illegally imposed, or invalid as a matter of law." New York v. Mitchell, No. 1632/76 (N.Y. Sup. Ct. September 23, 2003) [hereinafter, "State 440.20 Decision"]. The court noted that Mitchell did not contend that his sentence had been illegally imposed, but only that the reclassification interfered with his ability to achieve parole. (Id.) The court alternatively addressed the merits, noting that "[a]n offense committed before the enactment of these statutes is not excluded from classification as a violent felony notwithstanding it was not so classified when committed, as long as the elements of the crime when committed are the same as those of an offense now defined as a violent felony offense." (Id.)

Mitchell has also pursued other legal avenues to challenge his continued incarceration, including filing several petitions for writs of habeas corpus with the federal

courts. In the instant petition, which was filed on March 3, 2004, Mitchell contends that the New York State Department of Correctional Services has violated the *Ex Post Facto* Clause of the United States Constitution by reclassifying his second degree murder conviction as a conviction for a violent felony offense pursuant to New York Penal Law § 70.02 ("Section 70.02"), which was enacted after he committed his offense. He also argues that the parole board violated the Due Process Clause of the Fourteenth Amendment by relying on that reclassification to deny him parole, and by denying him parole simply on the basis of the violent nature of his crime of conviction, as a result of political pressure from Governor George Pataki. In view of Mitchell's numerous previous habeas petitions, this Court initially directed him to seek permission from the United States Court of Appeals for the Second Circuit to file a second or successive habeas petition. On July 6, 2004, the Second Circuit issued a mandate denying permission to file a second or successive petition relating to Mitchell's trial or sentence, but allowing the filing of a petition challenging post-conviction and post-sentencing events affecting the length of Mitchell's incarceration, on the grounds that such a challenge was not successive. See Mitchell v. Conway, No. 04-1598 (2d Cir. July 6, 2004). On May 4, 2005, Mitchell filed a motion to have the Court appoint him counsel, and also requested an evidentiary hearing regarding "newly discover[ed] evidence." (Pet. Ltr. (May 4, 2005).)

Subsequent to initiating these proceedings, Mitchell initiated a proceeding in New York State Supreme Court pursuant to Article 78 of New York's Civil Practice Law and Rules challenging the denial of parole after his second appearance before the parole board on March 11, 2003. See Allah v. Pataki, No. 6925-03 (N.Y. Sup. Ct. March 6, 2004). The

New York State Supreme Court held that the parole board's decision was not arbitrary and capricious but was grounded in due consideration of a number of factors relevant to Mitchell's case. The court specifically rejected Mitchell's contention that the board's decision rested entirely on the violent nature of Mitchell's crime of conviction. Id. The Appellate Division affirmed that determination and also found that Mitchell's contentions that the board had been improperly influenced by political pressure and that he had been classified a violent felony offender were "without merit." Allah v. Pataki, 789 N.Y.S.2d 764, 764–65 (N.Y. App. Div. 2005).

## II. Standard of Review

The Kings County District Attorney urges this Court to grant deference to the decision of the New York State Supreme Court which denied the Mitchell's most recent section 440.20 motion, since that motion asserted the same challenge made here. See 28 U.S.C. § 2254(d)(1) (stating federal court shall not grant writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" except in certain limited circumstances). The Court concludes that this decision is not owed deference, however, because the state court misperceived Mitchell's contention and relied on inapposite state law in addressing the merits of his claim. It relied on case law which addressed the constitutionality of laws which have the effect of increasing punishment for *subsequently committed* crimes by reclassifying earlier convictions in an offender's criminal history. (See State 440.20 Decision.) That issue is different from Mitchell's contention that misapplication of the 1978 law has impermissibly increased the punishment for his 1977 conviction. See Gryger v. Burke, 334 U.S. 728, 732 (1948) ("The

sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."). Since the reasoning of the state court decision does not apply to Mitchell's claim, the Court declines to accord it any deference.

### III. Discussion

In the present case, Mitchell was convicted of murder in the second degree in 1977. In 1978, the State of New York enacted laws classifying certain offenses as "violent felony offenses." Mitchell claims that his second degree murder conviction has been wrongfully reclassified as a violent felony offense by the Parole Board pursuant to this law, and that such reclassification violates the *Ex Post Facto* and Due Process Clauses of the United States Constitution.

#### A. Mitchell's *Ex Post Facto* Claim.

The *Ex Post Facto* Clause provides that "[n]o bill of attainder or ex post facto Law shall be passed." U.S. Const., Art. I, § 9, cl. 3. The Supreme Court has held that a penal law violates the *Ex Post Facto* Clause if 1) it applies to events occurring before its enactment, and 2) it disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981). The Court later clarified that an ambiguous or speculative "disadvantage" is insufficient to implicate the *Ex Post Facto* Clause. California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n.3 & 509 (1995) (upholding constitutionality of law which allowed parole hearings for certain inmates every three years instead of annually). Rather, the clause means simply that "[l]egislatures may not retroactively alter

the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990).

Although Mitchell contends that the *Ex Post Facto* Clause has been violated by the retroactive reclassification of his murder conviction, he has not identified any law which applies retroactively to him and by which he has been disadvantaged. Indeed, as Mitchell correctly notes, his conviction for murder in the second degree is not classified as a conviction for a "violent felony offense" by Section 70.02. In New York, murder in the second degree is categorized as a "class A-I felony." N.Y. Penal Law § 125.25 (flush language). The statutory phrase "violent felony offense" is defined to include only "a class B violent felony offense, a class C violent felony offense, a class D violent felony offense, or a class E violent felony offense." N.Y. Penal Law § 70.02. Since class A-I felonies are not included in that definition, Mitchell's second degree murder conviction is not classified by statute as a violent felony offense. Accordingly, he has no argument that there was a classification made after he committed the offense in 1977 that adversely impacted him.[1]

Mitchell's contention that the State nevertheless has mistakenly classified him as a violent felony offender does not raise a claim under the *Ex Post Facto* Clause. That clause applies only to legislative acts, and therefore does not apply to the mistaken application of an otherwise valid law. See Marks v. United States, 430 U.S. 188, 191 (U.S. 1977) (noting

---

[1] Mitchell's conviction for criminal possession of a weapon in the second degree was apparently classified as a conviction of a violent felony offense after he committed the offense. N.Y. Penal Law § 70.02. However, Mitchell has already served more than the maximum term of 10 years of imprisonment that was imposed for that charge and does not allege that its subsequent classification as a "violent felony offense" has affected him in any way. Moreover, nothing in the record suggests that the Parole Board ever considered the statutory classification of this charge as a "violent felony offense" in rendering a decision in his case.

*Ex Post Facto* Clause is "a limitation upon the powers of the Legislature"). Such mistakes instead raises concerns under the Due Process Clause of the Fourteenth Amendment. Cf. id. (holding Due Process Clause of Fifth Amendment protects against certain retroactive applications of judicial precedent); Bouie v. City of Columbia, 378 U.S. 347, 353–54 (1964) (same, in context of Fourteenth Amendment).

      B.     Mitchell's Due Process Claims

Mitchell has raised two claims under the Due Process Clause of the Fourteenth Amendment. First, that the Parole Board has erroneously classified him as a "violent felony offender" and relied upon that classification to deny him parole. Second, that the Parole Board has neglected its statutory obligations and has denied him parole solely on the basis of his crime of conviction, as a result of political pressure exerted by Governor George Pataki.

Neither the United States Constitution nor New York state law creates a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment. Greenholtz v. Inmates of the Neb. Panel and Corr. Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001). New York's parole provisions give the Parole Board wide discretion to consider carefully the "circumstances of each individual case," and do not create any entitlement to release. Barna, 239 F.3d at 171 (quoting N.Y. Comp. Codes R. & Regs. tit.9, § 8001.3(a)). Although New York law does direct the board to consider certain factors, it does not specify the weight to be attached to any individual factor. See N.Y. Exec. Law § 259-i(2)(c)(A) (enumerating factors the board must consider). The parole board may in its discretion find that any one of those

factors, including the severity of the inmate's offense of conviction, outweighs the other factors in a particular case and is grounds to deny parole. Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003). Unless the board fails to consider the relevant statutory factors, New York courts will not overturn the board's decision to deny parole unless the decision "exhibits irrationality bordering on impropriety." Bramble v. N.Y.S. Board of Parole, 761 N.Y.S.2d 544, 544 (N.Y. App. Div. 2003). "Thus, insofar as any inmate incarcerated in a New York State facility has any liberty interest in parole, that interest extends only to not being denied a petition arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or by reason of any other constitutionally unlawful grounds." Manley v. Thomas, 255 F. Supp. 2d 263, 266 (S.D.N.Y. 2003) (citing Meachum v. Fano, 427 U.S. 215, 226 (1976)).

    1.    There is no evidence that Mitchell has been classified as a "violent felony offender" by the Parole Board.

There is no evidence in the record that the parole board ever believed Mitchell's conviction for murder in the second degree to be classified as a violent felony offense under Section 70.02. Indeed, the transcript of Mitchell's March 8, 2005 parole hearing shows that the board agreed that Mitchell was not classified as a violent felony offender. (Tr. at 11 (March 8, 2005) ("You are not legislatively defined as a violent offender, I will give you that.").) Although Mitchell has supplied the Court with a memo he apparently received from the Office of the Inmate Records Coordinator at Attica Correctional Facility asserting that his "offenses of Criminal Possession of a Weapon 2nd and Murder 2nd are both classified as VFO's," (Memo, Pet.'s Exh. 12 (May 12, 2003)), there is no evidence that this memo has any relevance to Mitchell's parole proceedings. Nor is there any other

8

evidence that the parole board ever considered the statutory classification of Mitchell's murder conviction when denying him parole. Neither New York's Executive Law nor the Division of Parole's guidelines authorize or encourage Parole Boards to consider whether an inmate has committed a "violent felony offense" within the meaning of Section 70.02 when deciding whether to grant parole. See N.Y. Exec. Law §§ 259-i(1)(a)(i), (2)(c)(A) (enumerating factors board may consider); N.Y. Comp. Codes R. & Regs. tit.9, §§ 8001.3, 8002.3. An affidavit from counsel to the Division of Parole submitted in this case states that the Parole Board generally does not consider the classification of crimes when deciding whether to grant parole. (Tracy Aff. ¶ 6 (""[T]he Parole Board does not, and can not, categorize parole eligible inmates by reason of their crimes of conviction when considering them for possible release to parole supervision.").) Finally, the Parole Board in this case made no mention of the classification of Mitchell's crimes of conviction in any of its three decisions denying him parole, but instead emphasized the nature and circumstances of the crimes, Mitchell's in-prison disciplinary problems, and the board's conclusion that "there is a reasonable probability that [Mitchell] would not live and remain at liberty without again violating the law." (E.g., Parole Board Release Decision Notice, Tracy Aff. Exh. A (March 8, 2005); see also Parole Hearing Tr. at 23 (March 8, 2005).)

It appears that Mitchell objects to any discussion of the violent nature of his crime because his crime is not statutorily defined to be a "violent felony offense." (See, e.g., Parole Board Release Decision Notice, Tracy Aff. Exh. A (August 19, 2005) (stating "Reasons for Denial" include "the violent nature and circumstances of the instance offense").) This objection is not well-founded. Simply because a crime is not within the

9

statutory definition of "violent felony offense" does not mean that the crime is not violent, nor that it would be improper for the Parole Board to consider the violent nature of the crime. Mitchell was convicted of killing another person by shooting him multiple times, a crime which anyone would characterize as violent. The Parole Board may permissibly consider that violence when deciding whether to release Mitchell into society. See N.Y. Exec. Law §§ 259-i(1)(a)(i), (2)(c)(A) (directing Board to consider the seriousness of an inmate's offense of conviction and any aggravating or mitigating factors when deciding whether to grant parole).

      2.     There is no evidence of political pressure in Mitchell's case.

Mitchell argues that he has been denied parole because Governor Pataki has pressured the Parole Board to deny parole to all inmates convicted of violent felonies. Mitchell appears to have presented this argument to the New York state courts during his Article 78 proceedings following the denial of parole after his second parole hearing, in 2003. See Allah v. Pataki, 789 N.Y.S.2d 764, 764–65 (N.Y. App. Div. 2005). Although the New York State Supreme Court did not address the argument, the Appellate Division specifically rejected it. Id.

Mitchell has submitted copies of several news reports and other publications showing the Governor to support granting parole more frequently to nonviolent offenders and less frequently to violent offenders. None of these documents, however, suggests that political pressure played any role in Mitchell's case. Nor does the record before the Court suggest that the parole board gave undue weight to Mitchell's crime of conviction or neglected the other factors enumerated by New York's Executive Law and the Division of

Parole's guidelines. Finally, as discussed above, the record shows that the Board's three denials of parole were not arbitrary and capricious, but were based reasonably upon a consideration of the circumstances of his individual case.

        C.        No evidentiary hearing or appointment of counsel is warranted.

Mitchell has requested an evidentiary hearing regarding "newly discover[ed] evidence" he has submitted to the Court. (Pet. Ltr. (May 4, 2005).) That evidence consists of a document purporting to show that the Parole Board considers the statutory classification of an offense when deciding whether to grant parole. ((Exh. 5, Pet. Letter to Court (March 28, 2005).) The affidavit of counsel to the New York State Division of Parole states that this document is a page from a "Parole Revocation Decision Notice" used by an administrative law judge during parole revocation proceedings. (See Tracy Aff. ¶ 8.) That description is consistent with the document, which on its face appears to relate to parole revocation rather than to the initial granting or denial of parole. (See Exh. 5 ¶ 1.G, Pet. Letter to Court (March 28, 2005) ("Revoke and Restore Recommendation").) Because Mitchell has not yet been granted parole and has not been subject to any parole revocation proceedings, the document does not show any action taken in his case. Moreover, Mitchell does not contend that this document reflects board action in his case. (See id. ("This document was provided to me by a paralegal assistant by the name Scott who was working with a parole case.").) The Court therefore concludes that an evidentiary hearing regarding the document is not necessary. See 28 U.S.C. § 2254(e).

A court may appoint counsel to represent indigent petitioners seeking writs of habeas corpus, with limited exceptions not applicable here. See 28 U.S.C. § 2254(h). The

Second Circuit has held that "counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). In the present case, the Court has concluded that Mitchell's argument is without merit and has determined that no evidentiary hearing is required in this case. Therefore, the Court denies Mitchell's request for appointment of counsel.

### IV. Conclusion

For the reasons stated above, Mitchell's application for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability will not be issued because petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(e)(2). The Clerk of the Court is instructed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 1, 2006

Carol Bagley Amon
United States District Judge